IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

COMMODITY INVESTMENT
RESOURCES CO. II, INC.,

Plaintiff,

v.

CIVIL ACTION FILE
NO. 1:19-CV-1296-TWT

JPMORGAN CHASE BANK, N.A.,

Defendant.

## OPINION AND ORDER

This is a breach of contract action. It is before the Court on Defendant JPMorgan Chase Bank, N.A.'s Motion to Dismiss [Doc. 3]. For the reasons set forth below, the Defendant's Motion to Dismiss [Doc. 3] is GRANTED.

## I.    Background

The Plaintiff Commodity Investment Resources Co. II, Inc. was, at the time of the wrongful acts alleged, a Delaware corporation with its main office in Gwinnett County, Georgia.[1] The Defendant JPMorgan Chase Bank, N.A. is an Ohio corporation.[2] On September 23, 2014, the Plaintiff opened a new

---

[1]    Compl. ¶ 1 [Doc. 1-1].

[2]    Compl. ¶ 2.

commercial account with the Defendant.[3]  The Plaintiff used the account as its

sole operating account.[4]  On or about December 16, 2017, the Defendant froze

the account after receiving a summons in a Gwinnett County State Court

garnishment proceeding.[5]  The debtor in that action was a now-defunct

Georgia corporation registered under the name "Commodity Investment

Resource Company LLC."[6] Similar names notwithstanding, the debtor was

not related to the Plaintiff.[7]  The Plaintiff attempted to notify the Defendant of

its mistake on multiple occasions to no avail, up to and including the date that

the funds were transferred to the Gwinnett County State Court.[8]  The Plaintiff

alleges that in early December of 2017 one of the Defendant's branch managers

notified the Defendant's Orders and Levies Department that the Plaintiff was

not the corporate entity named in the garnishment proceeding.[9]  The Plaintiff

---

[3]      *Id.* ¶ 3.

[4]      *Id.* ¶ 4.

[5]      *Id.* ¶¶ 5-6.

[6]      *Id.* ¶ 6.

[7]      *Id.* ¶ 7. The Defendant contends that the Plaintiff and the debtor were not as distinct as the Plaintiff suggests. The Defendant asserts on information and belief that (1) the Plaintiff was owned by the wife of the owner of the debtor, (2) the two entities shared a physical address, and (3) the Plaintiff's funds were used to pay debts of the owner of the debtor. Def.'s Mot. to Dismiss, at 5 n.3 [Doc. 3]. At the motion to dismiss stage, however, the Court will treat the facts alleged in the Complaint as true and will not consider the Defendant's unsubstantiated allegations to the contrary.

[8]      Compl. ¶¶ 8-11.

[9]      *Id.* ¶ 9.

further alleges that on December 28, 2017, it faxed copies of account signature cards to the Defendant proving that the Plaintiff's assets were not properly subject to garnishment. [10] The Defendant nevertheless transferred the Plaintiff's funds to the registry of the Gwinnett County State Court.[11] The Plaintiff subsequently filed a traverse in the garnishment proceeding.[12] On February 12, 2018, the trial court ordered the Defendant to return the funds to the Plaintiff.[13] The months-long freeze on the Plaintiff's account prevented the Plaintiff from operating its business, fulfilling customer orders, and buying and reselling its stock.[14]

The Plaintiff sued in the Superior Court of Gwinnett County alleging breach of contract, negligence, and fraud.[15] The Plaintiff seeks compensatory damages in excess of $250,000, punitive damages, and attorney's fees.[16] The Defendant timely removed to this Court pursuant to 28 U.S.C. § 1332 and § 1441(a).[17] The Defendant now moves to dismiss all claims against it.

---

[10] *Id.* ¶ 11.

[11] *Id.* ¶ 12.

[12] *Id.* ¶ 13.

[13] *Id.* ¶ 14.

[14] *Id.* ¶¶ 15-18.

[15] *Id.* ¶¶ 24-34.

[16] *Id.* ¶¶ 35-38.

[17] *See* Def.'s Notice of Removal [Doc. 1].

T:\ORDERS\19\Commodity Investment Resources Co\mtdtwt.docx

## II.    Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief.[18] A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely."[19] In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff.[20] Generally, notice pleading is all that is required for a valid complaint.[21] Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.

## III.    Discussion

The Plaintiff brings claims against the Defendant for breach of contract, negligence, and fraud for its alleged mishandling of the Plaintiff's operating account. The Plaintiff also brings ancillary claims for attorney's fees and

---

[18]    *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); FED. R. CIV. P. 12(b)(6).

[19]    *Bell Atlantic v. Twombly*, 550 U.S. 544, 665 (2007).

[20]    *See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination").

[21]    *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985), *cert. denied*, 474 U.S. 1082 (1986).

T:\ORDERS\19\Commodity Investment Resources Co\mtdtwt.docx

punitive damages. The Defendant argues that (1) the Plaintiff lacks standing to sue because it is a dissolved entity; (2) the Plaintiff's claims are barred by res judicata because they could have been raised in the garnishment proceeding; (3) the Defendant is protected under a safe harbor provision found in Georgia's garnishment code; (4) the Plaintiff's breach of contract claims are barred under the terms of the parties' Account Agreement; (5) the Plaintiff's tort claims are barred due to the contractual relationship between the parties; and (6) each count of the Complaint fails to state a claim on which relief can be granted.[22] The Court begins with the Defendant's standing argument, which, for reasons that the Court will explain, the Court treats as a motion to dismiss for lack of subject matter jurisdiction.

## A. Whether the Court Lacks Subject Matter Jurisdiction

The Defendant has submitted records from the Delaware Department of State's website showing that the Plaintiff was dissolved as a corporate entity on March 14, 2018, eleven months before the Plaintiff filed this action.[23] The Defendant argues that dissolved foreign corporations cannot sue in state court under Georgia law. A federal court sitting in diversity cannot maintain subject matter jurisdiction over an action that could not have been brought in the courts of the forum state.[24] Thus, although the Defendant purports to

---

[22]    Def.'s Mot. to Dismiss [Doc. 5].

[23]    *See* Ex. A to the Def.'s Mot. to Dismiss [Doc. 3-1].

[24]    *See Woods v. Interstate Realty Co.*, 337 U.S. 535, 538 (1949) ("For

T:\ORDERS\19\Commodity Investment Resources Co\mtdtwt.docx

challenge the Plaintiff's standing to sue, its argument is best understood as a challenge to the Court's exercise of subject matter jurisdiction in this case.[25] The Court will treat the Defendant's challenge as arising under Federal Rule of Civil Procedure 12(b)(1), which is the appropriate vehicle for challenging subject matter jurisdiction in federal court.[26]

Defendants can challenge subject matter jurisdiction under Rule 12(b)(1) by mounting "facial attacks" or "factual attacks."[27] A "facial attack" asks the district court to determine whether a basis for subject matter jurisdiction is sufficiently alleged in the complaint.[28] The district court must accept the plaintiff's allegations as true and limit the scope of its inquiry to the

---

purposes of diversity jurisdiction a federal court is in effect, only another court of the State") (interpreting *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938) and progeny) (citations and punctuation omitted); *Kinetic Concepts, Inc. v. Kinetic Concepts, Inc.*, 601 F. Supp. 496, 498-99 (N.D. Ga. 1985) ("[I]n a diversity case, a plaintiff who could not sue in the state courts of the forum cannot sue in the federal court.") (citing *Woods*, 337 U.S. 535).

[25]     *See Royal Am. Mgmt., Inc. v. WCA Waste Corp.*, 154 F. Supp. 3d 1278, 1283 (N.D. Fla. 2016) ("Although Article III standing, Article III and statutory grants of subject-matter jurisdiction, prudential standing, and real party in interest requirements are similar and closely related, they are conceptually distinct.") (citing *Elandia Int'l, Inc. v. Koy*, No. 09-20588-CIV, 2010 WL 2179770, at *4 (S.D. Fla. Feb. 22, 2010)).

[26]     *Alabama State Conference of NAACP v. State*, 264 F. Supp. 3d 1280, 1291 n.8 (M.D. Ala. 2017) ("A challenge to subject-matter jurisdiction implicates Rule 12(b)(1), not Rule 12(b)(6), of the Federal Rules of Civil Procedure[.]") (citing *McElmurry v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007)).

[27]     *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990).

[28]     *Id.*, at 1529.

face of the complaint.[29] A "factual attack," by contrast, challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered."[30] The district court is free to independently weigh the evidence and decide for itself whether subject matter jurisdiction exists, notwithstanding the existence of disputed material facts.[31] If a "factual attack" implicates the merits of the plaintiff's claim, however, the district court must instead proceed under Rule 12(b)(6) or Rule 56.[32]

The Defendant asks the Court to go beyond the pleadings to determine the Plaintiff's status of incorporation and to dismiss the case without reaching the merits of the Plaintiff's various state law claims. The Court therefore construes the Defendant's motion as a "factual attack" on the Court's subject matter jurisdiction. It follows that the Court can consider the extrinsic evidence put before it and does not need to accept the facts alleged in the Complaint as true for the limited purpose of adjudicating the Defendant's 12(b)(1) challenge. The Court notes, however, that its analysis would not differ substantially under the more restrictive "facial attack" standard. The

---

[29] *Id.*

[30] *Id.* (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).

[31] *Id.*

[32] *Id.*

Defendant relies solely on public records, namely printouts from the Delaware Department of State's website, that the Court could consider even if Rule 12(b)(6) safeguards applied.[33] The Court concludes from the records before it that the fact of the Plaintiff's dissolution is not reasonably in dispute. The Court must now turn to Georgia common and statutory law to determine whether the Plaintiff, as a dissolved corporation formerly incorporated under foreign law, could maintain this action in state court.

"At common law, a dissolved corporation ceased to exist and could not sue or be sued in its corporate name."[34] Most, if not all, states have adopted corporate survival statutes that allow dissolved corporations to engage in litigation for some period following dissolution.[35] Georgia's corporate survival

---

[33] *See* Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *Halmos v. Bomardier Aerospace Corp.*, 404 F. App'x 376, 377 (11th Cir. 2010) ("We have held that a district court may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a Rule 56 motion.") (citations omitted).

[34] 16A *Fletcher Cyclopedia of the Law of Private Corporations*, § 8142 (1995 rev. ed.) (cited with approval in *Hood Bros. Partners, L.P. v. USCO Distribution Servs., Inc.*, 140 F.3d 1386, 1391 (11th Cir. 1998)); *see also Tillett Bros. Const. Co. v. Dep't of Transp.*, 210 Ga. App. 84, 87 (1993) ("At common law the dissolution of a corporation terminated its legal existence.") (citing *Melrose Distillers v. United States*, 359 U.S. 271, 272 (1959)), *aff'd*, 264 Ga. 219 (1994).

[35] 16A *Fletcher Cyclopedia of the Law of Private Corporations*, § 8142 (1995 rev. ed.); *see also Tillett Bros. Const.*, 210 Ga. App. at 87 ("Ultimately all states adopted statutes which prolong the life of a corporation after dissolution to allow the corporation to dispose of its affairs in an orderly

statute permits dissolved corporations to engage in litigation for "any right or claim existing prior to such dissolution if action or other proceeding thereon is pending on the date of such dissolution or is commenced within two years after the date of such dissolution."[36] The Defendant argues that the Plaintiff cannot avail itself of Georgia's corporate survival statute because the statute does not by its terms apply to foreign corporations.[37] While the Defendant is correct that Georgia's corporate survival statute does not permit the Plaintiff to sue in Georgia state court, that is not the end of the inquiry. Under Georgia law, a foreign corporation's capacity to sue or be sued is determined by the law under which it was incorporated, unless a Georgia statute states otherwise.[38] Therefore, the corporate survival statute that governs the Plaintiff's capacity to sue is not Georgia's, but Delaware's.

Delaware's corporate survival statute states in relevant part that:

[a]ll corporations, whether they expire by their own limitation or are otherwise dissolved, shall nevertheless be continued, for the term of [three] years from such expiration or dissolution or for

---

fashion.") (citing Model Business Corporation Act Ann.2d, § 205, p. 2 (1971)).

[36] O.C.G.A. § 14-2-1410.

[37] *See* O.C.G.A. § 14-2-140 (defining "corporation" or "domestic corporation" as "a corporation for profit, *which is not a foreign corporation*, incorporated under or subject to the provisions of this chapter") (emphasis added); *see also Tr. Co. of Ga. v. Mortg.-Bond Co. of N. Y.*, 203 Ga. 461 (1948) (analyzing earlier version of corporate survival statute and holding that it did not apply to foreign corporations).

[38] O.C.G.A. § 9-11-17(b); *see also Tillett Bros. Const. Co.*, 210 Ga. App. at 87 (holding that a dissolved Tennessee corporation's capacity to sue in Georgia courts was governed by Tennessee law).

9

such longer period as the Court of Chancery shall in its discretion direct, bodies corporate for the purpose of prosecuting and defending suits, whether civil, criminal or administrative, by or against them, and of enabling them gradually to settle and close their business, to dispose of and convey their property, to discharge their liabilities and to distribute to their stockholders any remaining assets, but not for the purpose of continuing the business for which the corporation was organized.[39]

The Plaintiff is well within the three-year window established by the statute. The Court is unaware of any case law interpreting this statute that would prevent the Plaintiff from suing for actions sounding in tort or contract that accrued prior to its dissolution. The Defendant cites Delaware case law suggesting that suits brought by a dissolved corporation must be "incident to the winding up of its affairs."[40] But the Defendant does not explain why the Plaintiff's exercise of its legal rights is not "incident to the winding up its affairs." Indeed, one of the cases cited by the Defendant appears to directly refute its position. In *Addy v. Short*, the Supreme Court of Delaware interpreted a predecessor to Delaware's current corporate survival statute and held that:

> [w]hatever rights [the dissolved corporation] had, of whatever nature, are preserved in full vigor during the three-year period. Any other conclusion would contravene the plain language of the statute. The suggestion that the act of dissolution in itself in some

---

[39]     8 Del. C. § 278.

[40]     *See City Investing Co. Liquidating Tr. v. Cont'l Cas. Co.*, 624 A.2d 1191, 1195 (Del. 1993) (a voluntarily dissolved corporation "remains a viable entity authorized to possess property as well as sue and be sued incident to the winding up of its affairs") (citing *Addy v. Short*, 47 Del. 157 (1952) (interpreting earlier statutory scheme)).

T:\ORDERS\19\Commodity Investment Resources Co\mtdtwt.docx

fashion works a forfeiture or extinguishment of a legal right, by analogy to the death of an individual, is therefore on the face of the statute unsound.[41]

Thus, the fact that the Plaintiff dissolved prior to bringing suit does not, under Delaware law, warrant dismissal of this action.

But Georgia law places an additional hurdle in front of foreign corporations seeking to maintain suits in state court. O.C.G.A. § 14-2-1502(a) states that "a foreign corporation transacting business in this state without a certificate of authority may not maintain a proceeding in any court in this state until it obtains a certificate of authority."[42] While the statute does not bar a foreign corporation from filing suit in Georgia state court, the corporation must subsequently acquire a certificate of authority to maintain the suit or risk dismissal.[43] The Defendant asserts that the Plaintiff transacted business in Georgia but never acquired a certificate of authority from the Georgia Secretary of State, thereby warranting dismissal under O.C.G.A. § 14-2-1502(a). The Court finds the Defendant's argument unpersuasive. Under

---

[41]    47 Del. at 163.

[42]    O.C.G.A. § 14-2-1502(a).

[43]    *Transportation Ins. Co. v. El Chico Restaurants, Inc.*, 271 Ga. 774, 775 (1999); *see also TPI Holdings, Inc. v. Winfield Dyco Holding Ltd.*, No. 1:09-CV-0801-CAP, 2009 WL 10665133, at *3 (N.D. Ga. Oct. 29, 2009) (lack of a certificate of authority is a defect that can be cured "through later registration and through the filing of an amendment setting forth a certificate of authority.") (citing *Health Horizons, Inc. v. State Farm Mut. Auto. Ins. Co.*, 239 Ga. App. 440, 444-45 (1999)).

Georgia law, the Defendant "has the burden of 'proving the facts necessary to support a judgment of dismissal'" pursuant to O.C.G.A. § 14-2-1502(a).[44] The Defendant has merely alleged, without proof, that the Plaintiff never possessed a certificate of authority. The Complaint itself makes no mention of a certificate of authority, or lack thereof. Nor does it provide sufficient information from which to glean whether the Plaintiff "transacted business" within the meaning of the statute or whether the Plaintiff's in-state activity fell under one of the many exceptions listed in O.C.G.A. § 14-2-1501(b). The Defendant does not put any extrinsic information before the Court from which to determine whether the Plaintiff has ever held a certificate of authority or whether it transacted business within the meaning of the statute. The Defendant's request for dismissal pursuant to O.C.G.A. § 14-2-1502(a) must therefore be denied.[45]

---

[44] *Ovation Mktg., Inc. v. Sturz*, No. 1-07-CV-1634-JEC, 2008 WL 11412177, at *2 (N.D. Ga. Feb. 22, 2008) (quoting *Mfrs. Nat'l Bank of Detroit v. Tri-State Glass, Inc.*, 201 Ga. App. 253, 254, 410 S.E.2d 808, 809, (1991)); *see also Health Horizons, Inc. v. State Farm Mut. Auto. Ins. Co.*, 239 Ga. App. 440, 444 (1999) ("A motion to dismiss under OCGA § 14–2–1502(a) is a motion in abatement or a dilatory plea, which is not an adjudication on the merits… Such a plea based upon OCGA § 14-2-1502(a) is raised as an affirmative defense, which must be specially pled in the answer.") (citations omitted); *Carrier 411 Servs., Inc. v. Insight Tech., Inc.*, 322 Ga. App. 167, 170 (2013) ("A defendant bringing a motion in abatement has the burden of proving the facts necessary to support a judgment of dismissal.").

[45] Because the Defendant failed to carry its burden, the Court need not reach the question of whether a plaintiff that was previously, but is not currently, transacting business in the State of Georgia may maintain a suit without a certificate of authority.

## B. Whether the Plaintiff's Claims are Barred by Res Judicata

The doctrine of res judicata bars relitigation of claims that have already been decided by a court of competent jurisdiction.[46] The Defendant argues that the Plaintiff's claims are barred by the doctrine of res judicata because the Plaintiff could have, but did not, raise its claims in the state court garnishment proceeding. Georgia law controls whether the Plaintiff's third-party appearance in the garnishment proceeding prevents it from bringing this suit.[47] Three requirements must be met before res judicata will bar a subsequent action under Georgia law:

(1) [t]he earlier action must have been adjudicated "by a court of competent jurisdiction;"

(2) there must be "identity of parties and subject matter" between the two actions; and

(3) the party against whom the doctrine of res judicata is asserted must have had a "full and fair opportunity to litigate the issues" in the earlier action.[48]

---

[46] *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1263 (11th Cir. 2011).

[47] *See id.* ("In considering whether to give preclusive effect to state-court judgments under res judicata or collateral estoppel, the federal court must apply the rendering state's law of preclusion.") (citing *Kizzire v. Baptist Health Sys., Inc.*, 441 F.3d 1306, 1308 (11th Cir. 2006)) (other citations omitted).

[48] *Fowler v. Vineyard*, 261 Ga. 454, 455 (1991) (citations omitted).

T:\ORDERS\19\Commodity Investment Resources Co\mtdtwt.docx

According to the Complaint, the parties in this case were both parties to the state court garnishment proceeding.[49] The trial court in that proceeding rendered a judgment in the Plaintiff's favor.[50] The question therefore becomes whether the Plaintiff had a "full and fair opportunity" to present its claims to the trial court in the garnishment proceeding. The Defendant insists that the Plaintiff had the opportunity to raise its breach of contract and tort claims but failed to do so. The Plaintiff argues that the scope of garnishment proceedings is strictly limited by statute and that the statutory scheme does not permit third-party claimants to bring breach of contract, negligence, and fraud claims against a garnishee.

The Defendant relies on the Court of Appeals of Georgia case *Copeland v. Wells Fargo Bank, NA* to support the proposition that tort and contract claims can be raised in a garnishment proceeding.[51] In *Copeland*, plaintiffs James Harris and Mark Underwood initiated a garnishment proceeding in Fulton County State Court after securing a favorable jury verdict against defendant Elmore Copeland in Fulton County Superior Court.[52] Harris and Underwood named Copeland's bank, Wachovia Bank, N.A., as a garnishee.[53]

---

[49]     Compl. ¶¶ 6, 13.

[50]     *Id.* ¶ 14.

[51]     317 Ga. App. 669 (2012).

[52]     *Id.*, at 670.

[53]     *Id.*

Wachovia answered that it held a certificate of deposit belonging to Copeland, and paid $42,344.58 into the court registry.[54]  Copeland did not file a traverse in the garnishment proceeding, nor did he otherwise object to Wachovia's payment of funds into the court registry. Instead, Copeland filed suit seven and a half years later in Fulton County Superior Court against Wells Fargo Bank, N.A., the successor in interest to Wachovia Bank, N.A., "seeking the proceeds from the certificate of deposit."[55]  It appears that the Plaintiff proceeded on a theory of conversion.[56]  Wells Fargo answered and moved for summary judgment in part on the grounds that the Plaintiff's claim was barred by the doctrine of res judicata.[57]  The Superior Court granted summary judgment and the Court of Appeals affirmed, reasoning that Copeland "was required to assert any claim superior to [Harris and Underwood] to the funds held by the garnishee" in the garnishment proceeding.[58]  His failure to assert his claim in the garnishment proceeding precluded him from later suing to recover his certificate of deposit in Superior Court.

The Defendant concludes from *Copeland* that parties to a garnishment

---

[54]    *Id.*

[55]    *Id.*

[56]    *Id.*

[57]    *Id.*

[58]    *Id.*, at 672 (quoting *Lamb v. First Union Brokerage Svcs.*, 263 Ga. App. 733, 736-737(1), 589 S.E.2d 300 (2003)).

T:\ORDERS\19\Commodity Investment Resources Co\mtdtwt.docx

proceeding have the opportunity to raise any legal claims, including tort and contract claims, related to the garnishment proceeding. But the Court finds this reading of *Copeland* difficult to square with the statutory scheme governing garnishment proceedings, O.C.G.A. § 18-4-1 et seq., and the case law interpreting it. Garnishment did not exist at common law and was not created by statute in Georgia until 1822.[59] The purpose of a garnishment proceeding is to determine who has the superior claim to garnished property and to distribute that property accordingly.[60] If the trial court determines that the third party has asserted a superior claim to some or all of the garnished property, the remedy envisioned by the statute is distribution of that property to the third party.[61] Trial courts adjudicating a garnishment proceeding can certainly resolve disputes regarding whether funds are properly subject to garnishment.[62] But the Court cannot reasonably read the statutory scheme, which must be strictly construed,[63] to permit a trial court to determine

---

[59] *Worsham Bros. Co. v. Fed. Deposit Ins. Corp.*, 167 Ga. App. 163, 164, 305 S.E.2d 816, 818 (1983).

[60] *TBF Fin., LLC v. Houston*, 298 Ga. App. 657, 657 (2009) ("In the garnishment suit the question is whether the garnishee is indebted to the defendant.") (quoting *Ledbetter v. Goodroe*, 176 Ga. 845 (1933)); *Akridge v. Silva*, 298 Ga. App. 862, 865 (2009) ("Garnishment is purely a statutory proceeding and will not be extended so as to reach money or property of the defendant not made subject thereto by statute.").

[61] O.C.G.A. § 18-4-19(c)(4).

[62] *Akridge*, 298 Ga. App. at 865.

[63] *Nat'l Loan Inv'rs L.P. v. Satran*, 231 Ga. App. 21 (1998) ("[O]ur garnishment statute is in derogation of the common law and, thus, must be

16

whether a garnishee is liable to a third party for its improper handling of garnished property. Such an inquiry would range far beyond the bounds of Georgia's garnishment code, which clearly envisions such proceedings as ancillary to the action in which judgment was rendered and conducted for the limited purpose of determining whether and to what extend a garnishee is indebted to the defendant/debtor named in the proceeding.[64] Nothing in the statutory scheme suggests that a trial court could award monetary and equitable remedies to a third party extending far beyond mere distribution of the garnished property. Simply put, the Court agrees with the Plaintiff that it could not have raised its breach of contract, negligence, and fraud claims in the state court garnishment proceeding.

*Copeland* is not to the contrary. In *Copeland*, the plaintiff sued on a theory of conversion. To establish a prima facie case for conversion, a plaintiff must show (1) title or the right of possession to the property at issue; (2) that the defendant actually possesses the property; (3) that the plaintiff has demanded return of the property; and (4) that the defendant refused to return the property.[65] Recovery in a conversion action is limited to the return of the

_____

strictly construed[.]") (quoting *Terrell v. Fuller*, 160 Ga. App. 56, 58 (1981)).

[64]    *See TBF Fin., LLC*, 298 Ga. App. at 657 ("A garnishment action is ancillary to the original action determining a debt between a plaintiff/creditor and defendant/debtor.").

[65]    *Hooks v. Cobb Ctr. Pawn & Jewelry Brokers, Inc.*, 241 Ga. App. 305, 308 (1999) (citing *Jennette v. Nat'l Cmty. Dev. Servs., Inc.*, 239 Ga. App.

property itself or money damages equivalent to the property's highest proved value.[66] Copeland's right of ownership in the certificate of authority was precisely the issue that would have been adjudicated in the garnishment proceeding. Moreover, the remedy that Copeland appears to have requested— return of the certificate or its equivalent value—was likewise identical to the remedy that would have been available in the garnishment proceeding. It is therefore unsurprising that the Court of Appeals of Georgia concluded that Copeland's claim was barred by the doctrine of res judicata. *Copeland* does not, however, stand for the proposition that any tort or contract claim may be adjudicated in a garnishment proceeding. The Court concludes that the Plaintiff did not have a "full and fair opportunity" to raise its claims in the garnishment proceeding, and the Defendant's motion to dismiss on res judicata grounds should be denied.

### C. Whether the Safe Harbor Provision in Georgia's Garnishment Code Shields the Defendant from Liability

The Defendant asserts that it reasonably believed that the Plaintiff's funds belonged to the similarly-named defendant to the garnishment proceeding, and so cannot be liable to the Plaintiff pursuant to the safe harbor provision of Georgia's garnishment code, O.C.G.A. § 18-4-23(b). The safe harbor provision states in relevant part that:

---

221, 225(4) (1999)).

    [66]    O.C.G.A. §§ 44-12-151, 44-12-152.

T:\ORDERS\19\Commodity Investment Resources Co\mtdtwt.docx

> [a] garnishee and a plaintiff shall not be subject to liability to any party or nonparty to the garnishment at issue arising from the attachment of a lien or the freezing, payment, or delivery into court of money or other property reasonably believed to be that of the defendant if such attachment, freezing, payment, or delivery is reasonably required by a good faith effort to comply with the summons of garnishment.[67]

The reasonableness of the Defendant's beliefs is plainly a question of fact that is vigorously disputed in the Complaint. Moreover, the safe harbor provision lists several factors that must be considered in determining whether the Defendant reasonably complied with a summons in a garnishment proceeding, including:

> the accuracy and quantity of the information supplied by the plaintiff [to the garnishment proceeding] pursuant to paragraph (2) of subsection (b) of [O.C.G.A. §] 18-4-7 with the manner in which such garnishee maintains and locates its records, the compliance by such garnishee with its own procedures, and the conformity of the record systems and procedures with reasonable commercial standards prevailing in the area in which such garnishee is located.[68]

The Court has no facts before it from which to make this determination. Accordingly, the Defendant's motion to dismiss on the grounds that it is protected by the safe harbor provision of Georgia's garnishment code should be denied.

## D. Whether the Plaintiff Can Maintain Its Breach of Contract Claim

The Court turns now to the merits of the Plaintiff's individual claims.

---

[67]     O.C.G.A. § 18-4-23(b).

[68]     *Id.*

Under Georgia law, a party seeking to recover on a breach of contract claim must show "(1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken."[69] The Defendant argues that the unambiguous terms of the parties' Account Agreement bar the Plaintiff from pursuing a breach of contract claim for the conduct alleged in the Complaint.[70] The Defendant references Section I(3) of the Agreement, which sets forth the circumstances under which the Defendant might "remove funds from [the Plaintiff's] account to hold them pending investigation[.]"[71] As relevant to this action, Section I(3) notifies the account holder that the Defendant can freeze or otherwise remove funds when:

- "your account is involved in any legal or administrative proceeding; …
- we are complying in our sole judgment, with any federal, state or local law, rule or regulation, including federal asset control and sanction rules and anti-money laundering rules, or with our policies adopted to assure that we comply with those laws, rules or regulations; or
- we reasonably believe that doing so is necessary to avoid a loss or reduce risk to us."[72]

---

[69] *Kuritzky v. Emory Univ.*, 294 Ga. App. 370, 371 (2008) (citing *Odem v. Pace Academy*, 235 Ga. App. 648, 654 (1998)).

[70] The Defendant has attached the parties' Account Agreement in full to its motion to dismiss. *See* Ex. B to the Def.'s Mot. to Dismiss [Doc. 3-2]. The Account Agreement is properly before the Court because it is central to the Plaintiff's claim and its authenticity is not disputed. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

[71] Ex. B to the Def.'s Mot. to Dismiss, at 17.

[72] *Id.* The Agreement as a whole makes clear that the terms "we" and "us" refer to the Defendant and that the terms "you" and "your" refer to

T:\ORDERS\19\Commodity Investment Resources Co\mtdtwt.docx

The Defendant also references Section I(8) of the Agreement, which states in relevant part that:

> [i]f we receive any legal process relating to you or your account, you authorize us to comply with it. "Legal process" means any document that appears to have the force of law that requires us to hold or pay out funds from your account, including a garnishment, attachment, execution, levy or similar order.[73]

The Defendant argues that the Plaintiff's breach of contract claim, which is premised on the Defendant's allegedly improper handling of the Plaintiff's funds in response to a summons in a garnishment proceeding, is precluded by the above-cited contractual provisions of the parties' Agreement.

Under Georgia law, "the construction of a contract is a question of law for the court."[74] After careful review of the contractual provisions identified by the Defendant, the Court cannot conclude that any of them shield the Defendant from liability for the conduct alleged in the Complaint as a matter of law. Section I(6) of the Agreement states that "[a]ny provision of this agreement that limits the bank's liability does not negate the bank's duty (if any) under applicable law to act in good faith and with reasonable care."[75]

_____

the account holder.

[73]     *Id.*, at 18.

[74]     O.C.G.A. § 13-2-1; *Unified Gov't of Athens-Clarke Co. v. Stiles Apartments, Inc.*, 295 Ga. 829, 832 (2014).

[75]     Ex. B to the Def.'s Mot. to Dismiss, at 17 [Doc. 3-2].

Under Georgia law, "good faith is an element of every contract."[76] The contractual provisions identified by the Defendant clearly and unambiguously give the Defendant unilateral discretion to determine how best to comply with garnishment summons. But the Plaintiff has plausibly alleged that the Defendant had proof that the garnishment summons did not relate to the Plaintiff's account and that it nevertheless refused to unfreeze the account. The Court cannot reasonably construe these contractual provisions to permit the Defendant to exercise its discretion in a manner that is manifestly unreasonable or in bad faith. Because the question of whether the Defendant acted reasonably and in good faith is in dispute, the Defendant's motion to dismiss the Plaintiff's breach of contract claim with prejudice should be denied.

But, while the Court disagrees with the Defendant that the contract on its face absolves it of liability, the Court does agree that the Plaintiff has failed to plead its breach of contract claim in conformity with the pleading standards set forth in Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires that a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Count One of the Plaintiff's Complaint states in conclusory fashion that the "Defendant breached its account contract

---

[76] *Kleiner v. First Nat. Bank of Atlanta*, 581 F. Supp. 955, 960 n.5 (N.D. Ga. 1984) (citing O.C.G.A. § 13-4-20; *Crooks v. Chapman Co., Inc.*, 124 Ga. App. 718, 719–20 (1971)); Restatement (Second) of Contracts § 205 (1981).

T:\ORDERS\19\Commodity Investment Resources Co\mtdtwt.docx

with Plaintiff."[77] Count One does not indicate which contractual provisions were breached or how the Defendant breached them. "There is precedent for dismissal of breach of contract claims where a plaintiff has failed to point to any particular contractual provision."[78] The Plaintiff's breach of contract claim should be dismissed without prejudice. Because this is the first time that the Court is dismissing the claim, the Court will give the Plaintiff one opportunity to amend the Complaint pursuant to Eleventh Circuit policy.[79]

### E. Whether the Plaintiff Can Maintain Its Negligence Claim

"The essential elements of a negligence claim are the existence of a legal duty; breach of that duty; a causal connection between the defendant's conduct and the plaintiff's injury; and damages."[80] Under Georgia law, however, "no action in tort may lie upon an alleged breach of [a] contractual duty."[81]

---

[77]     Compl. ¶ 25.

[78]     *Bivin-Hunter v. Wyndham Vacation Resorts, Inc.*, No. CIV.A 109CV03465JOF, 2010 WL 1409855, at *4 (N.D. Ga. Mar. 30, 2010) (citing *American Casual Dining, L.P. v. Moe's Southwest Grill, L.L.C.*, 426 F. Supp. 2d 1356, 1369 (N.D. Ga. 2006)).

[79]     *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) ("In the special circumstance of non-merits dismissals on shotgun pleading grounds, we have required district courts to sua sponte allow a litigant one chance to remedy such deficiencies.") (compiling cases).

[80]     *Seymour Elec. & Air Conditioning Serv., Inc. v. Statom*, 309 Ga. App. 677, 679 (2011) (citing *Wilson v. Mallard Creek Holdings*, 238 Ga. App. 746, 747 (1999)).

[81]     *Fielbon Dev. Co., LLC v. Colony Bank of Houston Cty.*, 290 Ga. App. 847, 855 (2008).

According to Count Two of the Complaint, the "duty" that the Defendant allegedly breached was the "duty to act reasonably in the handling of [the] Plaintiff's account."[82] This duty, and any other duty that the Plaintiff might plausibly assert that it was owed, arose from the contract entered into by the parties. The Court therefore agrees with the Defendant that the Plaintiff's negligence claim is "mere surplusage" and should be dismissed with prejudice.[83]

### F. Whether the Plaintiff Can Maintain Its Fraud Claim

A plaintiff alleging fraud must prove the following five elements: "(i) false representation made by the defendant, (ii) knowledge by the defendant that the representation was false when made, (iii) intent to induce plaintiff to act or refrain from acting, (iv) justifiable reliance by the plaintiff, and (v) damage to the plaintiff."[84] Count Three of the Complaint, in which the Plaintiff alleges that the Defendant committed fraud, fails to satisfy the minimal pleading requirements set forth in Rule 8(a)(2), much less the heightened

---

[82]    Compl. ¶ 28.

[83]    *See WESI, LLC v. Compass Envtl., Inc.*, 509 F. Supp. 2d 1353, 1361 (N.D. Ga. 2007) ("A breach of contract does not, by itself, give rise to a cause of action in tort; and when the allegation that a tort was committed adds nothing of substance to the breach of contract claim, it is mere surplusage.") (citing *Faircloth v. A.L. Williams & Assocs., Inc.*, 206 Ga. App. 764 (Ga. Ct. App. 1992)).

[84]    *Stephen A. Wheat Tr. v. Sparks*, 325 Ga. App. 673, 676 (2014).

pleading standards for fraud claims as set forth in Rule 9(b).[85] Count Three merely alleges that the Defendant "knew or should have known" that the Plaintiff's account was not properly subject to garnishment and that freezing the account would harm the Plaintiff.[86] These conclusory allegations neither track the elements of fraud under Georgia law nor "state with particularity the circumstances constituting fraud" as required by Rule 9(b).

When first confronted with procedural deficiencies in a complaint, district courts must typically grant at least one opportunity to amend the complaint.[87] A district court need not, however, grant leave to amend where such amendment would be futile.[88] The Court is skeptical as to whether the Plaintiff could ever make out a cognizable claim for fraud. Although not at all clear on the face of the Complaint, the "false representation" at issue in this case is presumably the Defendant's assertion that the Plaintiff's account was

---

[85] Rule 9(b) states in relevant part that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

[86] Compl. ¶¶ 32-33.

[87] *See Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1280 (11th Cir. 2006) (holding that plaintiffs whose pleadings failed to satisfy Rule 9(b) should be given leave to amend because there was "no repeated failure on [the plaintiffs'] part to draft a conforming complaint").

[88] *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) ("A district court need not, however, allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile.") (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

subject to garnishment. But the Plaintiff cannot claim to have relied on the Defendant's "false representations" while simultaneously alleging that it immediately and vigorously opposed every decision that the Defendant made regarding its account. Nevertheless, and in an abundance of caution, the Court will dismiss the Plaintiff's fraud claim without prejudice and with leave to amend. Any future dismissal of the Plaintiff's fraud claim will be with prejudice.

### G. Whether the Plaintiff Can Recover Attorney's Fees and Litigation Expenses

O.C.G.A. § 13-6-11 permits recovery of attorney's fees and litigation expenses in cases where the defendant "has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense[.]" Damages under O.C.G.A. § 13-6-11 "are ancillary and recoverable only where other elements of damage are recoverable on the underlying claim."[89] Because the Court will dismiss the Plaintiff's claims for breach of contract, negligence, and fraud, the Plaintiff's claim for attorney's fees and expenses of litigation should also be dismissed without prejudice.

### H. Whether the Plaintiff Can Recover Punitive Damages

O.C.G.A. § 51-12-5.1(b) permits plaintiffs to recover punitive damages "only in such tort actions in which it is proven by clear and convincing evidence

---

[89] *Freeman v. Wheeler*, 277 Ga. App. 753, 757 (2006).

that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." In its Complaint, the Plaintiff merely restates the statutory language without indicating which actions of the Defendant justify an award of punitive damages. The Plaintiff's claim for punitive damages should therefore be dismissed without prejudice for failure to comply with the pleading requirements set forth in Federal Rule of Civil Procedure 8(a)(2).[90]

## IV. Conclusion

For the reasons stated above, Defendant JPMorgan Chase Bank, N.A.'s Motion to Dismiss [Doc. 3] is GRANTED. The Plaintiff's negligence claim is dismissed with prejudice. The Plaintiff's claims for breach of contract, fraud, attorney's fees, and punitive damages are dismissed without prejudice and with leave to amend. The Plaintiff has fourteen (14) days from the date of this Order to file an amended Complaint that complies with the pleading requirements set forth in the Federal Rules of Civil Procedure.

---

[90] The Court notes that the statute by its terms limits the availability of punitive damages to tort claims. O.C.G.A. § 51-12-5.1(b) ("…only in such *tort* actions…"); *see also APAC-Se., Inc. v. Coastal Caisson Corp.*, 514 F. Supp. 2d 1373, 1382 (N.D. Ga. 2007) (punitive damages unavailable in action involving only contract claims). If the Plaintiff is unable to adequately replead its fraud claim, the Plaintiff's claim for punitive damages will also be due to be dismissed.

T:\ORDERS\19\Commodity Investment Resources Co\mtdtwt.docx

SO ORDERED, this 21 day of June, 2019.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge